## DAVIS v. ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY.

1. RAILROADS—NEGLIGENCE—CROSSINGS—JURY—MASTER AND SERVANT. —A FIREMAN, if excused for the time from his duties by his superior officers, occupies while attempting to cross the railroad track at a public crossing the relation of one of the public, and those in charge of his train owe him the same duty they owe the public, and whether he was a fireman or a member of the public at the time of the accident, is a question for the jury.

2. EVIDENCE—STREET—MAP.—A witness who knows may testify as to the width of a street without production of town map.

3. IBID.—RAILROADS—LESSEE.—In an action against a railroad for damages for negligent killing, it is proper to rule out all evidence tending to show that the road was at the time of the accident operated by another as lessee, and that servant injured was in employ of lessee and not of defendant.

4. NONSUIT.—There being some evidence here in support of plaintiff's action, nonsuit properly refused.

5. CROSSING—TRAVELED PLACE—JURY—CHARGE.—The width of a crossing or traveled place, if in question, is for the jury, and Judge did not charge on the facts in submitting this question to the jury.

6. CHARGE—ISSUE.—It is not error for Judge to state to the jury as the issue in a case an issue not distinctly made by the pleadings, but accepted by all throughout the trial as the prime issue.

7. RAILROADS—NEGLIGENCE—SIGNALS—CROSSING—TRAVELED PLACE.—

Under Rev. Stat. 1692, failure of railroad to ring the bell or blow the whistle when approaching a crossing or "traveled place," is negligence *per se.*

8. CHARGE—NEGLIGENCE.—Instruction that gross negligence "implies the utter want of caution or care amounting to recklessness, and a complete disregard of the care a man owes himself," held not misleading, when taken in connection with whole charge in this case.

9. IBID.—It is not a charge on facts to say, "I feel confident that you will not be influenced by the fact that the railroad is a rich corporation."

Before BUCHANAN, J., July, 1900, and BENET, J., March, 1901, Greenville.   Affirmed.

Action by Lula M. Davis, administratrix of Joseph D. Davis, against Atlanta and Charlotte Air Line Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. Cothran & Cothran,* for appellants.   *Mr. T. P. Cothran* cites: *Before there can be negligence to claimant, there must be a breach of duty to him:* Cooley on Torts, 660; 37 N. J. L., 5; 78 Ind., 323; 2 Elliott, sec. 467; 14 A. & E. R. R. Ca. (N. S.), 803; 3 Elliott, 1956; 41 N. E. R., 1051. *Fireman and engineer are fellow-servants:* 1 McM., 385; 39 S. W. R., 358; 56 S. C., 446; 18 S. C., 270.   *Employees cannot take advantage of omission to give statutory signals:* 2 Thomp. Com. Neg., sec. 1561.   *Error to exclude evidence that train was not operated by defendant:* 59 S. C., 544; 35 S. C., 439; 41 S. C., 86.   *Signaling statute can only apply to corporation operating train:* 47 S. C., 105, 376; 39 S. C., 517; 58 S. C., 222; 59 S. C., 254; 33 S. C., 136; 61 S. C., 495; 39 S. C., 514; 55 Fed. R., 551; 34 S. C., 451; 34 S. C., 292; 41 S. C., 287.   *The lessor railroad company is not liable for contractual obligations assumed by lessee company:* 41 S. C., 91; 25 S. C., 222; 17 Wall., 450; 13 N. E. R., 68; 72 Fed. R., 752, 282; 57 Fed. R., 173; 40 N. E. R., 579; 63 Tex., 549; 3 L. R. A., 267; 13 Am. St., 806; 145 U. S., 418; 74 Fed., 282; 37 S. E. R., 992; 25 S. C., 216; 28 S. C., 401; 33 S. C., 427; 41 S. C., 415; 43 S. C., 197; 25 S. C., 216.

*Proof of negligence must be made beyond mere failure to give signals:* 55 S. C., 389, 334; 10 Rich., 22; 8 Rich., 183; 9 Rich., 89; 39 S. C., 517; 2 Wood Ry., 1567; 40 Penn. St., 407; 2 Thom. Neg., sec. 1698; 3 Elliott R. R., 1747; 2 Wood R. R., 1514; 4 Ency., 1 ed., 922; 8 Ency., 2 ed., 588; 7 L. R. A., 588; 6 A. & E. R. R. Ca. (N. S.), 349; 9 *Ibid.,* 349; 2 Elliott R. R., sec. 1155; 40 S. C., 342; 19 S. C., 65; 32 S C., 144; 45 S. C., 365; 58 S. C., 413; 57 S. C., 302; 56 S. C., 539; 47 S. C., 105; 29 S. C., 318. *Gross negligence does not imply absence of all care:* 51 N. E. R., 522; 1 Thom. Com. Neg., secs. 23, 25; 16 Ency., 1 ed., 426; 15 S. C., 450; 19 S. C., 24; 20 S. C., 222, 264; 21 S. C., 102; 27 S. C., 270; 2 Thom. Com. Neg., sec. 1637. *Nor is it equivalent to recklessness:* 60 S. C., 67; 61 S. C., 189.

*Messrs. Haynesworth, Parker & Patterson,* contra, cite: *Charge as to meaning of gross negligence was not error:* 52 S. C., 125; 58 S. C., 229; 30 S. C., 228; 3 Elliott Ry., sec. 1254; Bus. on Per. Inj., sec. 162; 136 N. Y., 650. *Employee entitled to protection of signaling statutes:* 61 S. C., 497; 39 S. C., 517; 33 S. C., 139; 34 S. C., 299; 59 N. E. R., 1044; 157 Ill., 354; 65 Ia., 658; 161 Ill., 155; 170 Ill., 538; 32 Am. St. R., 615. *Owner of railroad is liable for injuries occasioned by operator's failure to give statutory signals:* 25 S. C., 221; 17 Wall., 445; 28 S. C., 401; 15 Am. R., 678; 15 Wall., 90; 80 N. Y., 29; 57 Am. R., 25; 132 Ill., 654; 22 Ill., 646; 71 Tex., 614; 10 L. R. A., 794; 28 S. C., 440; 3 Elliott Rys., sec. 431; 2 *Ibid.,* sec. 433; 58 A. St. R., 140; 19 Ency., 900; 37 L. R. A., 83; 26 S. C., 263. *As to construction of signaling statutes:* 33 S. C., 427. *Evidence tending to show that another than defendant operated the road properly excluded:* 35 S. C., 439.

April 8, 1902.    The opinion of the Court was delivered by
MR. JUSTICE POPE.    This action came on for trial before his Honor, Judge Benet, and a jury.    Verdict for the plaintiff.    After entry of judgment, defendant appealed to this

Court.    The grounds of such appeal may be thus classified:

*First.* Alleged error of Judge Buchanan in overruling certain grounds of defendant's demurrer to the original complaint.

*Second.* Alleged erroneous rulings of Judge Benet in refusing to allow the admission of certain testimony offered at the hearing before him by the defendant.

*Third.* Alleged errors in the charge of Judge Benet to the jury.

We will consider these groups of grounds of appeal in their order.

First.  Did Judge Buchanan err in refusing to sustain the defendant's demurrer to the original complaint on two grounds while he sustained it on the second ground?    The First and third grounds of demurrer were as follows: "1. That the deceased intestate was employed as a fireman upon the train which ran over him; his duty was upon the engine, and the employees operating said train did not owe him the duty of giving the statutory signals before moving said train, as alleged.    3.  That the deceased was employed as a fireman upon said train, he was one of the crew, and the employees operating said train did not owe him the duty of keeping an outlook upon said backing train."

These can scarcely be called vital questions, for leave to amend the complaint was granted when the second ground of demurrer was sustained.    As to whether a fireman should necessarily remain on the engine or immediately about it, was not the question of this cause.    A fireman or other servant can be excused from immediate duty for a short time, or until he is needed about his business as fireman, by his superior officer.    It was not alleged in the complaint that the intestate was run over by defendant's train while he was on his engine or immediately about it, but that he was run over by the train of defendant at a public crossing, without giving the signals required by the statute.    As soon as the order requiring the amendment to the complaint was made and acquiesced in by the defendant, the plaintiff's cause of action

was clear cut; it became an issue as to a traveled place and the absence of statutory signals, with the amendment allowed to be made in the complaint, and that, too, upon defendant's demurrer, these grounds of appeal lost all their vitality. They are overruled.

2. (a) Was it reversible error, when the Circuit Judge allowed the witness, W. H. McClure, to answer plaintiff's question as to the width of the street where the accident occurred. Defendant insists the map of the town was the best evidence. No map of the town of Westminster had been offered in evidence. The practical judgment of this witness as to the width of the street was evidence for what it should be considered worth by the jury. This exception is overruled.

(b) Was it reversible error in the Circuit Judge, when he refused to allow the witness for defendant, W. A. Vaughan, to testify as to what company owned and controlled that local freight train No. 63, the one which is alleged to have struck Mr. Davis (the intestate)? The complaint alleged and the answer admitted that the defendant was a corporation created under the laws of this State and that it is the owner of the railroad described in the complaint. What relevancy was there in the question presented to the issues raised by the pleadings by the parties to the litigation? None whatever. If the defendant was incorporated under the laws of this State and was the owner of its railroad, the corporation known as the Southern Railway Company could only occupy the tracks of said Atlanta and Charlotte Railway Company as lessee or by defendant's consent, and what benefit to the latter would result from the lease of its roadbed to the Southern Railway Company? Under the decisions of the Supreme Court of South Carolina, in the cases of *National Bank* v. *Railway Company*, 25 S. C., 222; *Harmon* v. *R. R.*, 28 S. C., 401; *Parr* v. *R. R. Company*, 43 S. C., 197, reinforced by the decision of U. S. Supreme Court, in the case of *Railroad* v. *Brown*, 17 Wallace, 450, it is established law that "when a railroad or other corporation receives its char-

ter from the State, conferring certain franchises, rights and privileges, it is upon the consideration that such corporation shall perform the duties and fulfil the obligations which it at the same time incurs. The fact that the corporation chooses to perform those duties and fulfill its obligations to the community through another whether by lessee or otherwise, cannot release it from the obligations it has assumed by the acceptance of its charter." Such being the law, the testimony sought to be introduced was irrelevant, and was properly excluded. This exception is overruled.

(c) So, also, when the defendant sought to have its witness, W. A. Vaughan, answer the question, "Did the Atlanta and Charlotte Air Line Railway Company own, operate or control the train which is alleged to have struck Mr. Davis?" the Circuit Judge properly refused to allow such testimony to be given, under the very law we have set forth in subdivision (b). This exception is overruled.

(d) Also, when the defendant sought to have its witness, W. A. Vaughan, answer the following questions: "Did the Atlanta and Charlotte Air Line Railway, on the 17th January, 1900" (the date of the intestate's injury), "operate local freight train No. 63, which is alleged to have struck Mr. Davis?" Again, "At that time was Mr. J. D. Davis" (the intestate) "an employee of the Atlanta and Charlotte Air Line Railway Company?" Again, "At that time was Mr. J. D. Davis employed as a fireman by the Atlanta and Charlotte Air Line Railway Company?" The Circuit Judge committed no error, for the reasons hereinbefore given. These several exceptions are overruled.

(e) Was it error for the Circuit Judge to rule as follows: "The Court rules out all testimony intended to show that the train of cars which committed the alleged injury was not owned or operated by the defendant company but by some other corporation. Also, all evidence tending to show that at the time of the alleged injury, the Atlanta and Charlotte Air Line Railway Company was operated by some other corporation. Also, all evidence tending to show that the de-

ceased was not an employee of the Atlanta and Charlotte Air Line Railway Company at the time that he, J. D. Davis, is alleged to have been killed." The grounds of exception being set forth above as (a) (b) and (c), under exception IV., subdivision (2). We think the views we have hereinbefore expressed fully sustain the rulings of his Honor, the Circuit Judge, and hence we overrule this exception.

(f) It is alleged that the Circuit Judge erred in ruling out the pay checks issued, such checks having been issued to the intestate, J. D. Davis, in his lifetime, and one after his death to his widow, the plaintiff, by the Southern Railway Company. Under the views we have hereinbefore announced, such testimony was very properly ruled out.

(g) We will consider now under this subdivision (g) what we ought to have noticed at the beginning, namely, the motion for a nonsuit. Certainly, it is now the established law in this State, that when there is any relevant testimony tending to establish plaintiff's cause of action, it is error for the Circuit Judge to withdraw the trial of the cause from the jury. We agree with the Circuit Judge, that there was some legal testimony offered by the plaintiff before she closed her case, and that being so, it was not error in the Circuit Judge to decline to grant the nonsuit asked for by the defendant.

3. We will now consider the alleged errors of the Circuit Judge in his charge to the jury. The appellant alleges the grounds of such errors, as follows:

"The presiding Judge erred in charging the jury as follows: 'You have heard the testimony as to the width of the traveled place on each side of the railroad track, and you are to say what is the width of the traveled place crossing the railroad track.' The error consisting in this: It was a violation of art. V., sec. 26, Constitution 1895, to state that there was testimony as to the width of the traveled place.

"(2.) The presiding Judge erred in charging the jury that they could consider the width of the street or traveled place on both sides of the railroad in determining the width of the

crossing. The question to be decided was, what was the width of the crossing as actually used.

"(3.) The presiding Judge erred in charging the jury that the deceased may have been off of the portion of the crossing actually used, and yet be entitled to the protection and benefits of the statute, if he was within the imaginary lines crossing the railroad projected from the side lines of the street or traveled place. It being submitted that the crossing referred to in the statute means only the portion of the railroad bed actually used for traveling.

"(4.) The presiding Judge erred in charging the jury as follows: 'The form of the complaint shows that the plaintiff is suing on the ground that Davis was about to cross the railroad track as any other private individual and not as a railroad employee. Not that he as a fireman in the discharge of his duty as a fireman was killed; but that he as a private individual was crossing the railroad track, and that he was entitled to the protection of the railroad law just as much as any one else.' The error consisting in this: The complaint is based upon the theory that while Davis was employed as a fireman, he had occasion to go upon and cross the track; that while he was so employed he was entitled to the protection of the signaling statute. It nowhere claims that he was acting as a private individual, and as such entitled to the protection of the statute.

"(5.) The presiding Judge erred in charging the jury as follows: 'Now, was Davis killed at a railroad crossing, and was the freight train at a stand-still within 100 rods from the crossing, and did the railway company fail to ring the bell or sound the whistle for thirty seconds before moving, and that they failed to ring the bell or sound the whistle until after it passed the crossing, and after the injury was caused by that neglect? Now, if all these matters have been proven and nothing else appears, then the railway is clearly liable.' The error consisting in this: (a) It holds the defendant liable upon proof that Davis was killed at a railroad crossing and that the defendant failed to give the statutory signals,

where it is not liable unless Davis is shown to have been upon the crossing and using it for the purpose of crossing from one side to the other; and it must further appear by the evidence that the failure to give the signals contributed to the disaster. (b) The action being under the statute which creates an exceptional liability, all the essential incidents referred to in the statute must appear. There can be no presumption that the failure to give the signals caused or contributed to the disaster, upon proof simply that no signals were given and that the collision occurred.

"(6.) The presiding Judge erred in charging the jury as follows: 'But when you come to speak of gross negligence, that implies the utter want of caution or care, amounting to recklessness and a complete disregard of the care a man owes himself.' The error consisting in this: (a) Gross negligence does not imply the absence of all care. (b) Gross negligence is not the equivalent of recklessness. The terms are essentially different, and it was error to confuse them. (c) It was error to cast upon defendant the burden of showing the gross negligence of the deceased to a degree amounting to recklessness.

"(7.) The presiding Judge erred in charging the jury as follows: 'I feel confident that you will not be influenced by the fact that the railroad company is a rich corporation.' The error consisting in this: (1) There is no evidence that the defendant is a rich corporation. (2) It was a charge upon the facts, in violation of art. V., sec. 26, Constitution 1895.

"(8.) The presiding Judge erred in charging the jury as follows: 'If you come to the conclusion that he (Davis) was not there as fireman, not working around his train as a fireman, but as a representative of the public, intending to cross, or about to cross, that railroad at the crossing; that is a question of fact for you. You will have to determine whether he was acting as a fireman at the time or whether he was acting as a private individual, as any other private individual.' The error consisting in this: The jury were limited to the alternative that Davis was either acting as fireman at the time or

was a member of the public.   The charge fails to recognize
the fact that he might have sustained the relation of employee
without being engaged actively in the duties of fireman, and
if so he was not entitled to the benefit of the statute.

"(9.) The presiding Judge erred in modifying the de-
fendant's seventh request to charge.   The request was as
follows: 'An engineer and fireman are, while employed in
the ordinary duties of their respective positions, fellow-ser-
vants, and if upon the same engine or train, the railroad
company employing them is not liable in damages for in-
juries resulting to either from the negligence of the other.
If, therefore, the jury believe from the evidence that the
deceased was a fireman, and was injured by reason of the
negligence of the engineer of the train upon which he was
working, they must find a verdict for the defendant.'   The
modification was as follows: 'That would be the law if the
evidence satisfies you that the deceased was killed while he
was working about the train as a fireman, as a fellow-ser-
vant; but if he was off duty as a private individual, intending
or attempting to cross, then this statute would not apply.'
The error being the same as in the preceding exception (8).

"(10.) The presiding Judge erred in charging the jury as
follows: 'So, gentlemen, what are the questions of fact
which you are to decide in this case?   First, was the railroad
company guilty of negligence in failing to give the signals,
as required by law, when Davis was killed; if so, is the rail-
road company liable for damages; if so, it would be liable if
Davis was himself not guilty of negligence.   It would be
liable, then, if Davis was guilty of ordinary negligence.'
Thus assuming one of the most essential questions in the
case, whether Davis was in a position to claim the benefit of
the statute."

We have long since announced that when we come to con-
sider the charge of a Circuit Judge, we but deem it fair that
he should be judged by all that he has said and not by frag-
ments thereof; hence we will reproduce the entire charge,
which is as follows:

"The trial of this case commenced on Wednesday forenoon and this is now Saturday morning, and it may seem that the case has taken considerable time to develop the testimony and hear the arguments; but a case of this kind necessarily requires the consumption of a good deal of time, and we congratulate you gentlemen on the patience and attention you have paid to the trial.    I ask you now to give close attention to the charge.    I have no doubt you have been greatly aided by argument of counsel.

"You will remember that the trial began by the reading of the complaint and the answer, and those pleadings show you the points involved in the trial.    It may be well to refresh your memory as to what are the real issues involved. The plaintiff, Lula M. Davis, brings this action as administratrix of the estate of her deceased husband, J. D. Davis, suing the Atlanta and Charlotte Air Line Company for $20,000 damages, which she says the company is liable for in negligently causing the death of her husband.    She sues for herself and her young daughter, Ruby.    The complaint shows that it is brought under our railroad law, spoken of as the signaling law, which I will read to you (read sec. 1685). I have read you only that part of the section which peculiarly applies to this case.    Now section 1692 provides (read). Those are the portions of the signaling statutes on which this complaint is brought.    The complaint charges that the deceased was upon the highway, on the railroad crossing, or was in the act of passing from one side of the railroad track to the other, and while doing so, the freight train of the defendant company was backed towards the crossing, and that the railroad company failed to ring the bell or sound the whistle, as required by law, before moving the train or after moving the train, and that on account of such negligence, no warning being given, no signal being given, the deceased while on the railroad crossing, on the highway, for the purpose of passing from one side of the railroad track to the other, was bruised and mangled, and that the injury resulted in his death.    The railroad company answers all of the alle-

gations in the plaintiff's complaint, and alleges that under the circumstances attending the death of Davis, he (Davis) was guilty of gross negligence, and that such gross negligence contributed to the injury complained of; so, gentlemen, you are to determine now, after having heard all of the testimony and the argument, whether the allegations have been made good by the proof, or whether there is a failure of proof sufficient to justify a verdict for the plaintiff, notwithstanding the negligence of the railroad company, whether the deceased was guilty of contributory negligence; if he was guilty of contributory negligence, she could not recover, even though the railroad company had been negligent. I am glad that this case has been remarkably free from any abuse of railroad corporations. There is no doubt that railway corporations have great powers and privileges conferred upon them by the State, and it is also a fact that that they have great duties and responsibilities to the public devolving upon them, not only as passengers traveling on the railroad trains, but the public on the highways, which cross their track; and among the duties which they owe to the public is the very important duty to observe the signaling law, to give the signals, to ring the bell after a moving train is moving and about to approach that crossing. There is no doubt that these two sections that I have read make it more difficult for the railroad company to make out its defense, than if it was brought at common law for negligence. The statutes make it more easy for a plaintiff to make out a case, yet I am bound to charge you that this is a very important law, and the people of the country have the right to move backwards and forwards in vehicles, or on horses, or on foot, and perhaps these highways are as important, or more so, than the railroads; in the construction of railroads, fields and crops may be run over upon sufficient compensation given, yet in exercising that great power they have to observe the law and give the proper signals in crossing railroad crossings. Even with statutes upon our books, people are killed at railroad crossings, and property injured, such as cattle, horses, etc. The basis of this action is that the

railroad company failed to comply with the signaling statute. That is the basis of the plaintiff's action. That Davis was killed and that he was a fireman. The form of the complaint shows that the plaintiff is suing on the ground that Davis was about to cross the railroad track as any other private individual and not as a railroad employee. Not that he as a fireman in the discharge of his duty as a fireman was killed, but that he as a private individual was crossing the railroad track, and that he was entitled to the protection of the railroad law just as much as any one else. If you come to the conclusion that he was not there as a fireman, not working around his train as a fireman, but as a representative of the public, intending to cross, or about to cross, that railroad at the crossing—that is a question of fact for you. You will have to determine whether he was acting as a fireman at the time or whether he was acting as a private individual, as any other private individual. You will have to determine whether he had the right to be off duty or not. Whether he was there by permission of his superior or not. You will have to determine from the testimony whether he was there as a fireman or as a private individual.

"There is one allegation in the complaint that that train backed without any outlook on the back of the train. If there is any evidence on that point before you in the case that there was no outlook on the engine or on the train, you will not regard that testimony. Such allegation I regard as surplusage, and not to be considered. The action is brought on the statute as to signaling. Now, the complainant must make out her case before she can recover anything, by a preponderance of the evidence, the greater weight of the evidence. And when the railroad company puts up the defense that his death was caused by contributory negligence, the railroad company is to make that out by the preponderance of the proof. So far as the negligence is concerned, the statute explains, that which I have read to you, that the whistle shall be sounded or the bell rung for thirty seconds before the standing train moves, and kept on sounding until the engine

or cars have passed at that place.    If you are satisfied by the preponderance of the testimony, that that train was standing still within 100 rods of the crossing, and that it moved towards the crossing without the sounding of the whistle or the ringing of the bell for thirty seconds before moving, and that it came to that crossing without ringing the bell or blowing the whistle, then the negligence charged, if that has been proven to you, has been made out negligence *per se,* that would be negligence in itself.    But if the deceased was guilty of negligence, that requires more explanation : Negligence is the want of due care, or ordinary negligence is the want of ordinary care.    Negligence may be shown by acts done, or by leaving undone what should have been done.    The doing that which should not have been done by a man of ordinary prudence and intelligence and caution, would be negligence. So, also, leaving undone by a man of ordinary prudence and intelligence and caution that which should be done, would be negligence.    There is no fixed rule, no hard, fast rule of negligence, each case must furnish its own.    But when you come to speak of gross negligence, that implies the utter want of caution or care, amounting to recklessness, and a complete disregard of the care a man owes himself—as where a man recklessly exposes himself to danger, such conduct as will amount to gross or wilful negligence, showing an utter disregard to a duty to himself to take care of himself—and if you are satisfied by the preponderance of the evidence that Davis was guilty of gross negligence, even if the railroad company failed to ring its bell or blow its whistle, as the statute required, the plaintiff could not recover, and you would have to find for the defendant company.    The railroad company claims that the deceased contributed to his own death.    That is for you to say.

"So, gentlemen, what are the questions of fact which you are to decide in this case?    First: was the railroad company guilty of negligence in failing to give the signals, as required by law, when Davis was killed ; if so, is the railroad company liable for damages ; if so, it would be liable if Davis was him-

self guilty of negligence.    It would be liable, then, if Davis
was guilty of ordinary negligence—a mere lack of the want
of ordinary care; but it would not be liable if Davis was
guilty of gross negligence.    When there is sufficient proof
that the railroad company has neglected to ring the bell or
sound the whistle, as required by law, and some person is
injured at a highway, street or traveled place, or crossing,
and a person is injured by negligence on the part of the rail-
road company, the railroad company would be liable, but that
may be overcome by proof that the person so injured was
guilty of gross negligence.    (Now, was Davis killed at a
railroad crossing, and was the freight train at a stand still
within 100 rods from the crossing, and did the railway com-
pany fail to ring the bell or sound the whistle for thirty sec-
onds before moving, and that they failed to ring the bell or
sound the whistle until after it passed the crossing and after
the injury was caused by that neglect?    Now, if all these
matters have been proven and nothing else appears, then the
railway is clearly liable.)    But, as the statute says, unless it
be shown that he was guilty of gross or wilful negligence, it
would not be liable.    As to the railroad crossing, the allega-
tion being that he was killed at the crossing, upon the cross-
ing, while attempting to cross from one side of the railway
track to the other; it is hard to give a definition of a railway
crossing, but it is sufficient to say that it may or it may not be
limited to any plank or wood work that would be placed
there.    It depends upon the testimony in the case.    In this
case, what the width of that railway was; you have heard the
testimony as to the width of the traveled place on each side of
the railroad track, and you are to say what is the width of the
traveled place crossing the railroad track.    There is no law
limiting the crossing to any planking that may be there on
the railway track, but it depends upon the testimony in the
case as to what it is.    If there was evidence in this case that
this was a highway, street or traveled place, then you will ask
what was the width of that well traveled street or traveled
place there at that railway crossing, then you will say

whether or not when Davis was struck and killed, he was or was not on the railroad crossing. That is for you to say from the testimony. The language of the statute is 'at the crossing;' that does not mean near the crossing or near by, but upon the crossing; but what the crossing is in this case, you must determine from the testimony. It is left for you entirely to say whether the crossing in this place was all covered with plank or partly covered with plank, and the width of the crossing, you are to say from the testimony, which you have heard. The complaint alleges that Davis was upon the highway at the crossing, for the purpose of passing across the railroad track, from one side of the railroad track to the other, on the highway, or traveled place or street, upon the railroad track. With regard to the question as to who are entitled to the protection of those signals, it has been held that the law does not intend it for the protection of bystanders, or people about there not intending to cross, but for persons intending or attempting to cross at the crossing and upon the crossing at the time he was struck.. All of that is for you to say from the testimony, and you will say whether or not Davis was a bystander at the time he was struck, not intending to cross, or whether or not he was intending or attempting to cross.

"I will now take up the requests to charge of the defendant. The first six having been withdrawn, and also from No. 16 to the last, I will begin by reading to you No. 7: '7. An engineer and fireman are, while employed in the ordinary duties of their respective positions, fellow-servants; and if upon the same engine or train, the railroad company employing them is not liable in damages for injuries resulting to either from the negligence of the other. If, therefore, the jury believe from the evidence that the deceased was a fireman and was injured by reason of the negligence of the engineer of the train upon which he was working, they must find a verdict for the defendant.' The Court: That would be the law if the evidence satisfies you that the deceased was killed while he was working about the train, as a fireman, as a fellow-

servant; but if he was off duty as a private individual, intending or attempting to cross, then this principle would not apply.

" '8. This action is brought under sections 1685 and 1692 of the Revised Statutes. The requirements of the statute relate only to ringing the bell or sounding the whistle. The statute does not require a lookout upon a backing train.' The Court: That is the law.

" '9. The action cannot be maintained except upon proof of failure to ring the bell or sound the whistle, as required by the statute. The plaintiff cannot recover upon proof of any other act of negligence. She cannot recover upon proof of failure to keep a lookout upon a backing train.' The Court: I have charged you that already, and charge you that as the law.

" '10. The object of the statute requiring such signals to be given is to prevent collisions which might occur between persons attempting to cross the track of a railroad and the locomotive or cars approaching the crossing at the same moment. The provisions of the statute do not include, nor was the statute intended to include, injuries inflicted upon bystanders not intending to cross, and not upon the crossing or using it to pass from one side of the track to the other.' The Court: I charge you that.

" '11. It is incumbent upon the plaintiff to establish by the preponderance of the evidence that the deceased was actually in the street upon the railroad crossing at the time he received the injuries complained of, and attempting to use the crossing for the purpose of passing from one side of the track to the other.' The Court: I so charge you.

" '12. If the jury believe from the evidence that the deceased was not in the street upon the railroad crossing at the time he was first struck by the train, they must find for the defendant.' The Court: I so charge you.

" '13. If the jury believe from the evidence that the deceased was in the street and upon the railroad at the time he was injured, but that he was not attempting to pass thereon

from one side of the track to the other, they must find for the defendant.' The Court: I so charge you, because if a person happens to be standing upon a railroad crossing, just standing there, then the statute does not apply to him. The statute is intended to apply to those who are intending or attempting to cross, but not to bystanders not intending or atempting to cross from one side of the track to another.

" '14. If the jury believe from the evidence that the deceased was guilty of gross negligence, and that such gross negligence contributed to the disaster in the sense of having some share or agency in bringing it about, they must find for the defendant.' The Court: I so charge you.

" '15. The gross negligence of the deceased, to relieve the defendant from liability, need not be the proximate or efficient cause of the disaster. It will be sufficient to relieve the defendant, if it contributed to the accident in the sense of having some share or agency in bringing it about.' The Court: That is the law. It means that if the gross negligence on the part of Davis was not the proximate cause of his death, but if it had a share in bringing it about, then that would relieve the company of liability.'

"Now, as to the damages. The amount demanded is $20,000, and you are to say from the testimony as to whether or not, if entitled to damages, she is entitled to no more than that. In considering the case, you are not limited to pecuniary loss, money loss, but you are to give such damages as you think appropriate with the loss of the life of Mr. Davis to his wife and child. If you come to the conclusion that the plaintiff is entitled to a verdict, you may give any amount, not more than $20,000, which you may think, judging from the testimony, which you may think she and her daughter have sustained in proportion to the loss of the husband and father. You may ask how much loss the widow has sustained, if any, and how much loss the daughter has sustained, if any, then you will say how much. Nothing in the nature of punitive or vindictive damages can be considered, they do not enter into the case at all.

"Now, gentlemen, there is the law of the case, the evidence which you have here is for you, and the law as given you by the presiding Judge, must control you in applying the evidence to the law and in considering the law in the case. The law is for the Court and the evidence is entirely for you. Your verdict will be based upon the truth you have found in the testimony which you have here. If you come to the conclusion that Mrs. Lula Davis is entitled to a verdict, I feel confident that you will not be influenced by the fact that the railroad company is a rich corporation, but you will try this case and find your verdict just as though you were trying a case between A. and B., and your verdict will be based upon the facts in the case. Now you will see upon the back of the complaint a former verdict for the plaintiff in the sum of $10,000, but that was set aside by the presiding Judge. I know not, and you know not, why the Judge set that verdict aside. You will not let that verdict influence your decision in this case at all, but you are to find your verdict according to the evidence in the case here now on trial. If you believe that the plaintiff has made out her case, that the railroad company was negligent, and that that negligence consisted in not observing the requirements of the statute, you will find for the plaintiff. But if Mr. Davis was guilty of contributory negligence, you will then find for the defendant; if he contributed to that extent by his own gross negligence, then you will find for the defendant. If you find for the plaintiff, say: 'We find for the plaintiff,' so much damages, writing your verdict out in words, and not in figures. If you find for the defendant, say: 'We find for the defendant.' "

The first three exceptions relate to what the charge of the Judge was on that subject. What the Judge did say was this: "It is hard to give a definition of a railway crossing, but it is sufficient to say that it may or may not be limited to any plank or wood work that would be placed there. It depends upon the testimony in the case. In this case, what the width of that railway was, you have

heard the testimony as to the width of the traveled place on
each side of the railroad track, and you are to say what is
the width of the traveled place crossing the railroad track.
There is no law limiting the crossing to any planking that
may be there on the railroad track, but it depends upon the
testimony in the case as to what it is.  If there was any
evidence in this case that this was a highway, street or trav-
eled place, then you will ask what was the width of that well
traveled street or traveled place * * * The language of the
statute is, 'at the crossing' * * * but what the crossing is in
the case, you must determine from the testimony * * * It
is left for you entirely to say whether the crossing in this
place was all covered with plank or partly covered with
plank, and the width of the crossing, you are to say from the
testimony which you have heard."    Thus it is manifest that
the Circuit Judge left it to the jury to determine under the
testimony what were the dimensions of this crossing on
which or near which the deceased lost his life.   Defendant's
counsel, at page 11 of the case for appeal, said : "I admit it is
a street crossing, but I do not admit that it is an extension of
a sixty feet street, and if they want to establish a sixty feet
street at that point, at that crossing, they must show it in the
regular way."    The Circuit Judge and jury heard this
admission made by appellant's counsel.    It is patent, there-
fore, that there was a question as to the width of the traveled
place, that is, the width of the crossing.    Hence there could
have been no impugning of the mandate of the Constitution
forbidding Circuit Judges to charge upon the facts thus far,
certainly.    These grounds of appeal are overruled.

We will now consider the *fourth* ground of appeal.    In
effect, it complains that the Circuit Judge in his general
charge pointed out that the action of the plaintiff was in-
tended to be brought as a private citizen as distin-
guished from as a fireman.    Unless the Circuit Judge
had explained to the jury in the construction of the
pleadings, that such was the action in the case at bar, their
minds would have been confused as to the doctrines of the

law as to fellow-servants, or, in other words, the breach of the obligation between master and servant. It is true, the plaintiff's complaint had laid stress upon the fact that the intestate was upon board of the engine as a *fireman,* yet it did not allege that when the collision occurred on the crossing, the intestate was there in the performance of his duties as a fireman. It is more likely that the allegations of the complaint referring to J. D. Davis as a fireman on the train which subsequently took his life, was intended to negative the idea of his being a bystander or an idle spectator. Undeniably, the issue was presented by plaintiff and accepted by defendant, that the intestate lost his life on a crossing while not in the performance of his actual duties as fireman. It was not contended that under the orders of the master the servant, as such, was attempting to cross the railroad at a traveled place or street crossing. On the contrary, the duties required by the master of this servant was as a fireman on the engine which carried that local freight train. Hence how could this language effect the issue injuriously to the defendant? Not at all. It seems to us that the language of the Circuit Judge was intended to bring the issue to the view of the jury clearly and distinctly. This exception is overruled.

The next question is the fifth exception. The appellant does not press this part of its exception. ("It holds the defendant liable upon proof that Davis was killed at a railroad crossing, and that the defendant failed to give the statutory signals, when it is not liable unless Davis is shown to have been upon the crossing and using it for the purpose of crossing from one side to the other.") See 34 p. of appellant's argument. But appellant presses with all his might the proposition, "That the action being under a statute which creates an exceptional liability, all the essential incidents referred to in the statute must appear. There can be no presumption that the failure to give the signals caused or contributed to the disaster, upon proof simply that no signals were given and that the collision

occurred." We have examined with great care the argument of appellant intended to establish this proposition. In it the appellant admits that it is in direct opposition to the principle announced in *Strother* v. *R. R. Co.,* 47 S. C., 381, to wit: "When the defendant violates the requirements of the statute as to ringing the bell or sounding the whistle, and a person is injured by its locomotive while crossing a highway, street or traveled place, it will be presumed that such negligence caused the injury, unless the testimony shows that the injury was caused in some other manner." The language of section 1692 of our Revised Statutes of 1893 is as follows: "If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this article, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, unless it is shown that, in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury." The question as to the liability of the railway corporation when it neglects to give the statutory signals, either by sounding the whistle or ringing the bell, before reaching a crossing, and a collision thereafter occurs, between the engine or cars of a railway corporation and a person on such crossing, has been before this Court in several cases, viz: *Hankinson* v. *R. R. Co.,* 41 S. C., 1; *Strother* v. *R. R. Co.,* 47 S. C., 381; *Wragge* v. *R. R. Co.,* 47 S. C., 105. And in each one of these cases it has been held that the moment it is established by the testimony that the railroad corporation neglected to give the statutory signals before reaching a crossing on which a person was injured, negligence *per se* was established against the railway corporation. Such corporation then had devolved

upon it the duty, in order to relieve itself of the conse-
quences of its neglect, to show that the person injured, in
addition to the mere want of ordinary care, was guilty of
gross or wilful negligence, or was guilty of an unlawful act
which contributed to the injury. When critically exam-
ined, it will appear that the decisions just cited are bottomed
upon the language of the statute itself. The statute law of
our State has thus pointed out to railway corporations the
effect of their negligence to observe the signal laws of the
State. It may be said that the laws of evidence in this State
have been changed so as to meet the exigencies of the disre-
gard of law by railway corporations. Therefore, however
ingenious the argument of appellant in opposition to this
view may seem, it is opposed to several of our decided cases.
As was remarked by Chief Justice McIver, in the case of
*Hankinson* v. *R. R., supra,* at page 19, "The rule, as we
understand it, is that the province of the Judge is to give the
jury a definition of the term negligence or gross negli-
gence * * * Of course, exceptions to this general rule may
be and have been established by statute—as, for example,
that the failure of a railroad company to ring the bell or
blow the whistle within a prescribed distance before the
train reaches the crossing of any public highway, &c., shall
of itself constitute sufficient proof of negligence." So in
*Wragge* v. *R. R. Co., supra,* the Chief Justice carefully
pointed out that the meaning to be attached to the word
"contributed" was to convey the idea that such act of the
railway company in not blowing its whistle or ringing its
bell when such act had some share or agency in producing
such result was negligence. The fact that some other
Courts or text-writers may take a different view of the
phraseology employed by our legislature in providing this
section 1692, may be regretted, but such a difference cannot
control this Court. We must adhere to the previous rulings
of our Court on this subject, and inasmuch as Judge Benet
was governed by our decisions, he is upheld. Let this
exception be overruled.

The next question is presented by the sixth exception, viz: that the Circuit Judge erred when he charged the jury: "But when you come to speak of gross negligence, that implies the utter want of caution or care, amounting to recklessness and a complete disregard of the care a man owes himself." · When the language of the Circuit Judge is carefully considered, keeping in mind that he is addressing his remarks to a clear-headed, honest-hearted and practical-minded set of jurors, no fear need be felt that his words were misapprehended by the jury. We can imagine words which might have been used by the Circuit Judge that would better express his meaning. Still, taking his charge as a whole, the jury was not misled as here complained of. This exception is overruled.

We will now consider the seventh exception. Here it is alleged that the Circuit Judge erred when he said: "I feel confident that you will not be influenced by the fact that the railroad company is a rich corporation." The motive of the Circuit Judge in the use of this language was to lead the jury to the utmost fairness in the trial of the cause. Sometimes a few words fitly chosen in the presence of the jury are very effective in causing them not to be governed by passion or prejudice or hasty judgment—to give every litigant his rights under the law. We cannot view with disfavor the words of the Judge. The exception is overruled. If there was no testimony, it certainly was not a charge upon the facts.

The eighth exception relates to the charge of the Circuit Judge as set out in the exception. It is complained that he narrowed the employment of the intestate by the railroad to that of fireman. There certainly was no contention that he was aught else than a fireman or a private individual. The charge must be practical—it was this, for it certainly pointed out the limits to the inquiry by the jury. We see no error here. The Circuit Judge left it to the jury to say under the testimony what the status of

the intestate was at that crossing. This exception is over-ruled.

The last inquiry but one is, was it error in the Circuit Judge to modify defendant's request, which was, "An engineer or fireman is, while employed in the ordinary duties of their respective positions, fellow-servants, and if upon the same engine or train, the railroad company employing them is not liable in damages for injuries resulting to either of them from the negligence of the other. If, therefore, the jury believe from the evidence that the deceased was a fireman, and was injured by reason of the negligence of the engineer of the train upon which he was working, they must find a verdict for the defendant." His Honor said: "That would be the law if the evidence satisfies you that the deceased was killed while he was working about the train as a fireman, as a fellow-servant; but if he was off duty, as a private individual intending or attempting to cross, then this statute would not apply." It is claimed that the error committed by the Judge is as pointed out in exception eight, viz: that the Circuit Judge narrowed the employment of the deceased by the railroad to that of fireman. Certainly, as we remarked in passing upon exception eight, the deceased was only charged with being a fireman. The very language of the request places the deceased in the position of a fireman on the train. This exception is overruled.

The last inquiry is involved in the tenth exception. The language complained of is set out in the exception itself. The whole charge is reproduced. It appears that the Judge covered the whole case in his charge. This language is only a small part of the charge, and could not have prejudiced the defendant.

It is the judgment of this Court, that the judgment of the Circuit Court is affirmed.

MR JUSTICE GARY *concurs in the result.*